**[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 500.]**

OFFICE OF DISCIPLINARY COUNSEL *v*. MILLER.

[Cite as *Disciplinary Counsel v. Miller*, 2002-Ohio-6729.]

*Attorneys at law—Misconduct—Six-month suspension with entire sanction stayed on condition—Recommending oneself for employment to a nonlawyer who has not sought attorney's advice regarding employment—Engaging in conduct prejudicial to the administration of justice—Continuing representation before a tribunal when representation will result in a violation of a Disciplinary Rule—Accepting employment if the exercise of professional judgment on the client's behalf may reasonably be affected by the attorney's financial, business, property, or personal interests.*

(No. 2002-1472—Submitted September 18, 2002—Decided December 18, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 02-01.

_____

**Per Curiam.**

{¶1} In this case, we sanction attorney Robin Renee Miller of Grand Rapids, Ohio, Attorney Registration No. 0059695. Respondent improperly solicited employment from a creditor of her husband and his ex-wife, then improperly undertook collection litigation against the ex-wife, and then failed to withdraw from that employment when her role in that litigation was challenged.

{¶2} The Board of Commissioners on Grievances and Discipline ("board") found that respondent's conduct violated DR 2-103(A) (recommending oneself for employment, as a private practitioner, to a nonlawyer who has not sought the lawyer's advice regarding employment except under limited conditions); DR 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice); DR 2-110(B)(2) (continuing representation before a tribunal when representation will

result in a violation of a Disciplinary Rule); and DR 5-101(A)(1) (accepting employment if the exercise of professional judgment on the client's behalf may reasonably be affected by the lawyer's financial, business, property, or personal interests). The board recommended that respondent be suspended from the practice of law in Ohio for six months, with the entire six months stayed.

{¶3} A panel of the board heard the cause and made findings based on the evidence and agreed stipulations. Respondent was married to Ronald C. Miller from 1988 to 1990, remarried Ronald in 1991, and since then and at all times relevant to this case has been married to Ronald. Ronald was married to Barbara Miller until 1986, when Barbara and Ronald dissolved their 18-year marriage.

{¶4} When Barbara and Ronald ended their marriage, the Wood County Common Pleas Court incorporated their separation agreement into the 1986 dissolution decree. The agreement specified terms for child custody, child support, division of property, and Ronald's indemnification of Barbara for all debts, business or personal, acquired during the marriage. As a part of the property division, Ronald agreed to pay Barbara $68,000 at the rate of $1,000 per month, beginning on April 1, 1986.

{¶5} While Ronald was married to Barbara, Ronald owned and operated "Letting Loose," a business that sold and serviced motorcycles. "Letting Loose" was incorporated as R.C. Miller & Sons, Inc., and Barbara worked as the bookkeeper for the business. The business eventually wound down, and by late 1987 or mid-1988, it had closed.

{¶6} In November 1987, U.S. Suzuki Motor Corp. ("Suzuki") obtained a default judgment in a federal court in California against Ronald and Barbara for $59,575.19, plus interest, attorney fees, and costs. Suzuki had sued on the basis of a 1983 personal guarantor's agreement and continuing guaranty that Ronald and Barbara had signed in connection with operating "Letting Loose." In 1989, Suzuki registered its judgment in federal court in Ohio.

**{¶7}** In 1996, Barbara obtained a consent judgment for more than $60,000 against Ronald in the Wood County Common Pleas Court, Domestic Relations Division. That judgment was based upon an arrearage and Ronald's noncompliance with the property distribution order in the 1986 dissolution. In August 1999, Barbara secured a garnishment of Ronald's wages in an effort to collect her consent judgment.

**{¶8}** As of August 1999, neither Barbara nor Ronald had paid any portion of the Suzuki judgment against them. That month, respondent contacted Suzuki, advised that she knew about the Suzuki judgment, and offered to represent Suzuki in efforts to collect the judgment from Barbara. Respondent further advised Suzuki that she was married to Ronald and would pursue a collection action only against Barbara. In November 1999, respondent entered into a fee agreement with Suzuki and signed a hold harmless agreement that protected Suzuki.

**{¶9}** In December 1999, respondent filed on Suzuki's behalf a creditor's bill against Barbara in the Wood County Common Pleas Court, seeking in excess of $60,000 (the *Suzuki* case). Respondent also garnished Barbara's wages, attempted an attachment of Barbara's bank accounts, and sought to attach the proceeds of Barbara's consent judgment against Ronald. In defending against the *Suzuki* case, Barbara asserted the affirmative defense of failure to join Ronald as a necessary party-defendant and also sought to disqualify respondent from representing Suzuki.

**{¶10}** In June 2000, while the *Suzuki* case was in progress, Barbara filed a contempt motion against Ronald for his failure to comply with the 1986 dissolution decree. Barbara asserted that Ronald had failed to pay her over $67,000 plus interest, which was still owed pursuant to the decree. Barbara also asserted that Ronald was in contempt for failing to indemnify her against the liability owed to Suzuki as promised in their separation agreement. In September 2000, the common

pleas court found Ronald in contempt and sentenced him to 30 days, suspended on conditions.

{¶11} In July 2000, the common pleas court in the *Suzuki* case ordered respondent to add Ronald as a necessary party defendant, which she did; however, respondent did not withdraw from the case. In August 2000, the same court disqualified respondent from representing Suzuki in the litigation. In September 2000, respondent filed, on Suziki's behalf, a motion to dismiss the *Suzuki* case without prejudice.

{¶12} In June 2001, the court of appeals affirmed the trial court's finding that Ronald was in contempt of court for not paying the property award ordered in the 1986 dissolution. *Miller v. Miller* (June 22, 2001), Wood App. No. WD-00-063, 2001 WL 709115. The court also affirmed the trial court's finding that Ronald was in contempt for failing to indemnify Barbara for the Suzuki debt. The court of appeals held that "a reading of the dissolution decree in its entirety supports the trial court's conclusion that [Ronald] was to indemnify [Barbara] for any debts of the marriage," specifically the debt owed to Suzuki pursuant to the 1983 guarantee, notwithstanding that the Suzuki debt was acquired in operating "Letting Loose" after the dissolution of the marriage.

{¶13} The panel accepted the stipulation that respondent had improperly solicited Suzuki in violation of DR 2-103(A) and concluded that once confronted with the impropriety of her representation of Suzuki, respondent should have withdrawn, as required by DR 2-110(B)(2). The panel further found that while respondent disclosed to Suzuki that she was married to Ronald, "the level of Respondent's personal interest in the matter of [the *Suzuki* case] was so significant as to, in effect, make the provisions of DR 5-101(A)(1) non-waivable under the circumstances involved here." The panel also found that "respondent's overall conduct was * * * prejudicial to the administration of justice, in violation of DR 1-102(A)(1) [sic, 1-102(A)(5)]."

{¶14} The panel found in mitigation that respondent had fully cooperated in the proceedings, that no prior complaints had been made against respondent as to her conduct, that respondent's behavior had "resulted from unique circumstances not likely to be repeated," and that respondent had expressed sincere remorse for her misconduct. Further, Suzuki was not prejudiced by respondent's misconduct. The panel adopted the agreed sanction of a six-month suspension, with the entire suspension stayed. The board adopted the findings, conclusions, and recommendation of the panel. The board also recommended that the costs of these proceedings be taxed to respondent.

{¶15} On review, we concur in the board's findings of misconduct and its recommendation. Respondent's decision to inject herself, as an attorney for a creditor, into the ongoing legal issues between her husband and his ex-wife was clearly improper and prejudicial to the administration of justice. Accordingly, respondent is hereby suspended from the practice of law in Ohio for a period of six months, with the entire sanction stayed on the condition that she commit no further violations of the Disciplinary Rules. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, First Assistant Disciplinary Counsel, for relator.

Arnold & Caruso, Ltd., and James D. Caruso, for respondent.

———————————